[Cite as *State ex rel. Chrisman v. Clearcreek Twp.*, 2013-Ohio-2396.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE EX REL. JACK CHRISMAN, | : | |
| Relator-Appellant, | : | CASE NO. CA2012-08-076 |
| | : | O P I N I O N |
| - vs - | | 6/10/2013 |
| | : | |
| CLEARCREEK TOWNSHIP, WARREN COUNTY, et al., | : | |
| | : | |
| Respondents-Appellees. | : | |
| | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11CV80194


Curt C. Hartman, 3749 Fox Point Court, Amelia, Ohio 45102 and Finney, Stagnaro, Saba & Patterson, Christopher P. Finney, 2323 Erie Avenue, Cincinnati, Ohio 45208, for relator-appellant

John D. Smith Co., LPA, John D. Smith, Andrew P. Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for respondents-appellees, Clearcreek Township, Glenn Wade, and Robert Lamb

Schroder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere, 5300 Socialville-Foster Road, Suite 200, Mason, Ohio 45040, for respondent-appellee, Cathy Lynn Anspach


**RINGLAND, J.**

{¶ 1} Relator-appellant, Jack Chrisman, appeals a decision of the Warren County Court of Common Pleas, granting summary judgment in favor of respondents-appellees,

Clearcreek Township (the "Township") and the Township's trustees, Cathy Lynn Anspach, Glenn E. Wade, and Robert D. Lamb (the "Trustees").

{¶ 2} Appellant filed suit against the Township and the Trustees, alleging systemic violations of Ohio's Open Meetings Act (the "OMA") arising out of the meetings between the Trustees and the Township Administrator that consistently occurred immediately before the regularly-scheduled public Township meetings.

{¶ 3} Those pre-meeting meetings would generally involve some or all of the Trustees arriving up to one-half hour prior to a regularly-scheduled public Township meeting. The Trustees would meet with the Township Administrator in his office, with the door open, to review and discuss matters that were to appear on that evening's agenda for the public meeting.

{¶ 4} Appellant argued that the pre-meeting meetings were in violation of the OMA. He alleges that the Trustees' conversations at those meetings extended beyond simple information-gathering and fact-finding, and instead ventured into more thorough deliberations of the Trustees' thoughts and assessments on township matters.

{¶ 5} In turn, appellees argued that the pre-meeting meetings were not prearranged or scheduled and that attendance of trustees was not mandatory. Rather, they assert that the meetings were merely an informal opportunity to meet with the Township Administrator and gather information or generally discuss the items on the agenda. According to appellees, they did not take formal action or vote on any matters at the pre-meeting meetings.

{¶ 6} Appellees filed motions for summary judgment, followed by appellant's cross-motion for summary judgment. On July 19, 2012, the trial court filed an entry and decision finding that appellant had provided no evidence that there were formal deliberations between the Trustees at the pre-meeting meetings. Rather, the trial court found the pre-meeting

meetings to be "classified as information-gathering and fact-finding sessions that do not constitute a violation of [OMA]." Accordingly, the trial court granted appellees' motions for summary judgment and denied appellant's cross-motion for summary judgment.

{¶ 7} Appellant appeals from that decision, raising a single assignment of error for our review.

{¶ 8} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF THE RESPONDENTS-APPELLEES AND IN DENYING SUMMARY JUDGMENT IN FAVOR OF THE RELATOR-APPELLANT.

{¶ 9} Within this assignment of error, appellant argues the trial court erred in granting summary judgment because sufficient evidence was introduced to show that appellees have "regularly and systematically" held pre-meeting meetings that either violated or threaten to violate the requirements of the OMA.

{¶ 10} OMA, as set forth in R.C. 121.22, seeks to prevent public bodies from engaging in secret deliberations on public issues with no accountability to the public. *State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 12th Dist. Nos. CA2011-05-045 and CA2011-06-047, 2012-Ohio-2569, ¶ 14. The act "shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law." R.C. 121.22(A). R.C. 121.22(C) likewise requires "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." Thus, OMA requires public bodies to deliberate public issues in public.

{¶ 11} R.C. 121.22(B)(2) defines "meeting" as "any prearranged discussion of the public business of the public body by a majority of its members." While "deliberations" are not defined in OMA, Ohio courts have found that they "involve more than information-gathering, investigation, or fact-finding." *Springfield Local School Dist. Bd. of Edn. v. Ohio*

- 3 -

*Assn. of Pub. School Emp., Local 530*, 106 Ohio App.3d 855, 864 (9th Dist.1995), citing *Holeski v. Lawrence*, 85 Ohio App.3d 824 (11th Dist.1993). Deliberations involve "'the act of weighing and examining the reasons for and against a choice or measure.'" *Springfield* at 864, quoting *Webster's Third International Dictionary* 596 (1961). "Question-and-answer sessions between board members and other persons who are not public officials do not constitute 'deliberations' unless a majority of the board members also entertain a discussion of public business with one another." *Springfield*, *id.*; *see also Carver v. Deerfield Twp.*, 139 Ohio App.3d 64 (11th Dist.2000).

{¶ 12} Ohio courts have also recognized that information-gathering and fact-finding are essential functions of any board, and that the gathering of facts and information for ministerial purposes does not constitute a violation of OMA. See *Holeski* at 829; *Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 192 Ohio App.3d 566, 2011-Ohio-703, ¶ 12 (1st Dist.); *Steingass Mechanical Contracting, Inc. v. Warrensville Hts. Bd. of Edn.*, 151 Ohio App.3d 321, 2003-Ohio-28 (8th Dist.).

{¶ 13} Under Civ.R. 56, summary judgment is appropriate when no genuine issues of material fact remain to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Grizinski v. Am. Express Fin. Advisors, Inc.*, 187 Ohio App.3d 393, 2010-Ohio-1945, ¶ 14 (12th Dist.). The moving party has the burden of demonstrating there is no genuine issue of material fact. *Id.* A dispute of fact can be considered "material" if it affects the outcome of the litigation, and considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.* This court's review of a trial court's ruling on a summary judgment motion is de novo. *Id.*

{¶ 14} In the present case, construing the evidence most favorably for the nonmoving party on each party's respective summary judgment motions, we find that reasonable minds

could come to differing conclusions.

{¶ 15} Appellant argues that there was testimony to indicate that the pre-meeting meetings were prearranged and regularly consisted of the majority of the Trustees. In support of that argument, appellant notes that Anspach testified that upon first becoming a trustee, Wade told her that she needed to be at the meeting place by 6:00 o'clock on the night of the meeting, one-half hour before it was to begin publicly. Linda Oda testified that upon being elected Fiscal Officer for the Township, she was told the trustees would meet prior to the public meeting to go over the agenda and "work things out." In addition, the Township Administrator testified that it was typical for one or more of the Trustees to show up at his office prior to almost every meeting.

{¶ 16} Appellant next argues that deliberations took place at those prearranged discussions. Oda testified as to numerous instances of potential deliberations that occurred during the pre-meeting meetings that could be interpreted as violations of the OMA. Oda stated that trustee Lamb informed her that the Trustees would, "meet in that office to go over the agenda so that they can appear to be on the same page before the meeting." Oda further testified that Lamb explained to her that the reasoning for the pre-meeting meetings was so that the Trustees could present a "cohesive front for the public, and that's why it was better to get any negative discussions out of the way in private so that they didn't have to have any negative discussions in the public." Oda confirmed that it was custom for the Trustees to use the pre-meeting meetings as a means to go over the agenda and make decisions.

{¶ 17} Oda also testified as to specific instances wherein the OMA may have been violated. In one circumstance, the Trustees voted unanimously at the public meeting to approve a portable restroom at a local park. However, Oda asserted that Lamb had advised her that there was dissension on the issue at the pre-meeting. According to Oda, this

dissension was nonexistent at the public meeting.

{¶ 18} In another instance, Oda testified that Lamb told her there had been an argument between the Trustees regarding the amount of the raise for the Township maintenance superintendent. According to Oda, she was told that the Township Administrator and one other trustee believed the superintendent should receive a three percent raise, while another trustee fought for a five percent raise. However, when the issue came to the floor at the public meeting, the superintendent's raise was approved without dissension.

{¶ 19} Appellant also pointed to testimony from the Trustees that indicated items were often removed from the agenda based on the discussions at the pre-meeting meetings. Anspach testified the Trustees would discuss how they felt about issues, give points and counterpoints, take informal votes on those issues, and occasionally remove items from the agenda based on the pre-meeting meeting discussions.

{¶ 20} In turn, appellees testified that the pre-meeting meetings were merely for information-gathering purposes or to discover what other Trustees' opinions were on the meeting's agenda.

{¶ 21} Wade testified that the meeting was used only to gather information and was neither scheduled nor was attendance required. He further testified that the removal of agenda items only took place when one of the Trustees was in need of additional information. Finally, Wade noted that the discussions at the pre-meeting meetings were typically between the Trustees and the Township Administrator, rather than between one another.

{¶ 22} Appellees assert that Anspach's testimony supports the argument that no formal action was taken at the pre-meeting meetings. While Anspach testified that informal votes were taken, she further testified that such votes were inferred based on observations

made during the discussions, rather than by individual Trustees announcing whether they were for or against an agenda item.

{¶ 23} Lamb also testified that the meetings were for information-gathering purposes only. He further asserted that the meetings were not private and that people often "stuck their head in" to say hello.

{¶ 24} After a de novo review of the record, and again upon construing the evidence in a light most favorable to the non-moving party on each party's respective summary judgment motions, we find that a genuine issue of material fact remains as to whether the pre-meeting meetings were prearranged, and whether appellees participated in deliberations at the pre-meeting meetings in violation of the OMA. Reasonable minds could differ as to whether the discussions at the pre-meeting meetings were prearranged and extended beyond information-gathering and into deliberations.

{¶ 25} There was conflicting testimony as to whether the pre-meeting meetings were prearranged, what the purpose of the meetings was, and whether deliberations took place therein. To answer those questions will require a trier of fact to weigh the evidence and make determinations as to the credibility of the witnesses' testimony. Accordingly, it is the trier of fact, not this court, who will ultimately decide whether a violation of the OMA occurred or is threatened to occur.

{¶ 26} In light of the foregoing, having found that the evidence did create a genuine issue of material fact as to whether appellees violated or threaten to violate the OMA, appellant's assignment of error is sustained insofar as the trial court erred in granting summary judgment in favor of appellees, and overruled regarding the trial court's denial of appellant's cross-motion for summary judgment.

{¶ 27} Judgment affirmed insofar as it denied appellant's motion for summary judgment, and reversed and remanded insofar as it granted appellees' motions for summary

- 7 -

judgment.

S. POWELL and PIPER, JJ., concur.