[Cite as *State ex rel. Chrisman v. Clearcreek Twp.*, 2014-Ohio-252.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO ex rel.<br>JACK CHRISMAN, et al., | : | |
| | : | CASE NO. CA2013-03-025 |
| Appellants, | : | O P I N I O N<br>1/27/2014 |
| - vs - | : | |
| | : | |
| CLEARCREEK TOWNSHIP, WARREN<br>COUNTY, OHIO, et al., | : | |
| | : | |
| Appellees. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11-CV-80194

Curt C. Hartman, 3749 Fox Point Court, Amelia, Ohio 45102 and Finney, Stagnaro, Saba & Patterson, Christopher P. Finney, 2623 Erie Avenue, P.O. Box 8802, Cincinnati, Ohio 45208, for appellants

John D. Smith, Andrew Meier, 140 North Main Street, Suite B, Springboro, Ohio 45066, for appellees, Clearcreek Township, Glenn Wade and Robert Lamb

Schroeder, Maundrell, Barbiere & Powers, Larry Barbiere, 5300 Socialville-Foster Road, Suite 200, Mason, Ohio 45040, for respondent, Cathy Anspach

**PIPER, P.J.**

{¶ 1} Relator-appellant, Jack Chrisman, appeals a decision of the Warren County Court of Common Pleas that ordered him to pay attorney fees as a sanction for engaging in frivolous conduct.

{¶ 2} Relator commenced an action in the Warren County Court of Common Pleas in 2011, alleging five violations of the Open Meetings Act (OMA) by respondents-appellees, Clearcreek Township and its three trustees (the Trustees). The violations were broken into two categories (1) allegations that four nonpublic meetings were held, and (2) an allegation that the Trustees engaged in the systematic holding of pre-meeting meetings.

{¶ 3} After the parties performed discovery, Relator's counsel approached counsel for the Trustees. Relator's counsel explained to the Trustees' counsel that Relator intended to dismiss the allegations related to the four nonpublic meetings because evidence did not support the proposition that the meetings were a violation of the OMA. Counsel for the Trustees suggested that the allegations remain intact so that they could be adjudicated by the trial court on summary judgment. The parties then filed motions for summary judgment. Relator did not argue that the four nonpublic meetings were a violation of the OMA, and instead, offered arguments specific to the systematic holding of pre-meeting meetings only.

{¶ 4} The trial court granted summary judgment in favor of the Trustees regarding the pre-meeting meetings, finding that they were not a violation of the OMA.[1] The trial court also granted summary judgment in favor of the Trustees as to the four nonpublic meetings. The Trustees then filed a motion with the trial court, asking it to order sanctions against Relator because the filing of the claim specific to the first four allegations regarding the non-public meetings had been frivolous. A magistrate held a hearing wherein Relator stipulated that the defense fees were reasonable, but argued that he had not engaged in frivolous conduct. The magistrate granted the Trustees' motion for sanctions after finding that the filing of the first four allegations was frivolous. The magistrate used a percentage approach and found that

---

1. On appeal, this court reversed the trial court's decision, finding summary judgment was inappropriate as to whether the pre-meeting meetings constituted violations of the OMA. *State ex rel. Chrisman v. Clearcreek Township*, 12th Dist. Warren No. CA2012-08-076, 2013-Ohio-2396.

approximately 20 percent of the Trustees' defense had been specific to the non-public meetings, and therefore ordered 20 percent of the attorney fees be paid, totaling $2,014.83.

{¶ 5} Relator objected to the magistrate's decision, and the trial court overruled the objection, adopting the magistrate's award of attorney fees. Relator now appeals the trial court's decision, raising the following assignment of error.

{¶ 6} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ASSESSING SANCTIONS PURSUANT TO R.C. 2323.51 IN THE AMOUNT OF $2,014.83.

{¶ 7} Relator argues in his assignment of error that the trial court erred in assessing sanctions because his suit was not frivolously filed and because the amount of fees was an abuse of discretion.[2]

{¶ 8} Appellate review of a trial court's decision regarding frivolous conduct involves mixed questions of law and fact. *Dudley v. Dudley*, 196 Ohio App.3d 671, 2011-Ohio-5870, ¶ 9 (12th Dist.). A court's factual determinations are accorded a degree of deference and will not be disturbed on appeal if there is competent, credible evidence in the record to support them. *Id.* However, legal questions require a de novo review. *Id.*

{¶ 9} According to Ohio's OMA, R.C. 121.22(I)(2)(b), "If the court of common pleas does not issue an injunction * * * and the court determines at that time that the bringing of the action was frivolous conduct, as defined in division (A) of section 2323.51 of the Revised Code, the court shall award to the public body all court costs and reasonable attorney's fees, as determined by the court."

---

2. As an initial matter, whether this appeal was taken from a final order was discussed at oral arguments. Neither party, however, argued that this court lacked jurisdiction to decide the appeal on its merits. We agree. R.C. 2323.51(B)(1) provides that "*at any time* not more than thirty days after the entry of final judgment in a civil action or appeal" a party may file a motion for sanctions. The statute specifies that the timing of the motion specific to the OMA is governed by R.C. 121.22(I)(2)(b), which requires only that the trial court (1) decline to issue an injunction as requested, and (2) find that the "bringing of the action was frivolous conduct as defined in division (A) of section 2323.51 of the Revised Code." The trial court did both in the case at bar so that the Trustees' motion was timely made.

{¶ 10} When determining whether conduct is frivolous pursuant to R.C. 2323.51, courts "must be careful not to deter legitimate claims. The statute is not intended to punish mere misjudgment or tactical error, but rather, it is designed to chill egregious, overzealous, unjustifiable, and frivolous action." *Cleveland v. Abrams*, 8th Dist. Cuyahoga No. 97814, 2012-Ohio-3957, ¶ 17. (Internal citations omitted.) The test to determine whether a claim is frivolous is "whether no reasonable lawyer would have brought the action in light of the existing law." *Id.*

{¶ 11} R.C. 2323.51 applies an "objective standard in determining frivolous conduct, as opposed to a subjective one. The finding of frivolous conduct under R.C. 2323.51 is determined without reference to what the individual knew or believed." *Hardin v. Naughton*, 8th Dist. Cuyahoga No. 99182, 2013-Ohio-2913, ¶14; *see also Dudley*, 2011-Ohio-5870 at ¶12.

{¶ 12} To demonstrate a violation of the OMA, the complainant must show that the public body simultaneously conducted a "meeting," and "deliberated" over "public business." *Tyler v. Village of Batavia*, 12th Dist. Clermont No. CA2010-01-002, 2010-Ohio-4078, ¶ 16. According to the OMA, a "meeting" is defined as "any prearranged discussion of the public business of the public body by a majority of its members." R.C. 121.22(B)(2). "Deliberation" is not a term defined in the OMA, but has been interpreted to mean "more than information-gathering, investigation, or fact-finding."[3] *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 185 Ohio App.3d 707, 2009-Ohio-6993, ¶ 72 (10th Dist.); *Cincinnati Enquirer v. Cincinnati Bd. of Edn.,* 192 Ohio App.3d 566, 2011-Ohio-703, ¶ 12 (1st Dist.).

---

3. This court has recently defined "deliberation" in the same manner. *State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 2012-Ohio-2569, 972 N.E. 2d 115, ¶ 48 (12th Dist.). We further defined "deliberation" as "involving the act of weighing and examining the reasons for and against a choice or measure." *Id.* While we did not adopt this definition until after Relator filed his claims, the definition is similar to that used by the courts in *Tobacco Use Prevention* and *Cincinnati Enquirer* as cited above.

{¶ 13} As an initial matter, and weaved throughout the entirety of Relator's brief, Relator argues that his filing cannot be considered frivolous where his counsel offered to dismiss the allegations related to the nonpublic meetings. However, the record is clear that Relator filed the cause of action and then the parties began litigation of the claims contained therein. The parties performed discovery, and the Trustees incurred expenses in defending against those allegations *before* Relator offered to dismiss them. Moreover, a court maintains jurisdiction over a claim that has been voluntarily dismissed to adjudicate collateral issues specific to that claim, including sanctions for frivolous conduct. *Long v. Rhein*, 12th Dist. Clermont Nos. CA2002-02-007, CA2002-02-008, 2003-Ohio-711; *Gitlin v. Plain Dealer Publishing Co.*, 161 Ohio App.3d 660, 2005-Ohio-3024, ¶ 14 (8th Dist.). Therefore, even if Relator had dismissed the first four claims, the trial court could still have ordered sanctions.

{¶ 14} The trial court found that Relator had filed a frivolous claim according to R.C. 2323.51(A)(2)(a)(iii), because the filing of the causes of action specific to the non-public meetings consisted of "allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

{¶ 15} While we agree with the trial court that Relator's filing was frivolous, we do so for a different reason. After our de novo review of the legal issues at hand, the more accurate analysis is that Relator's filing specific to his first four allegations constituted frivolous conduct pursuant to R.C. 2323.51(A)(2)(a)(ii), which provides that conduct is frivolous when "it is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law."

{¶ 16} According to the complaint, the first "illegal meeting" occurred during November 2009. Relator's complaint alleged that the trustees who held office at that time (Greg

McDonald, Glenn Wade, and Robert Lamb) held a "meeting" to discuss the recent election results. During the 2009 election, two trustee positions were on the ballot, and Wade won his bid for reelection while McDonald lost his seat to Cathy Anspach. McDonald, Wade, and Lamb allegedly met to discuss the possibility of Lamb stepping down so that McDonald could regain a trustee position and maintain his insurance benefits to aide his cancer-stricken wife. The complaint alleges that the second "illegal meeting" occurred in February 2010 once Anspach took her position as trustee. The complaint alleges that Wade and McDonald once again met with Lamb to discuss the possibility of Lamb stepping down so that McDonald could be appointed as trustee. The third "illegal meeting" was allegedly held in February 2011, during which Wade and a second person met with Lamb to once again discuss Lamb stepping down.

{¶ 17} We agree with the magistrate and trial court that even if Lamb gathered with others to consider stepping down from office as trustee, his decision to step down would constitute a personal, political decision, rather than "public business."[4] No reasonable attorney would have brought the claim because the first three allegations were specific to a personal decision that only Lamb could make, and did not, or could not, constitute a meeting at which deliberations occurred. Therefore, Realtor's claim based upon these allegations was not warranted under existing law, could not be supported by a good faith argument for an extension, modification, or reversal of existing law, and could not be supported by a good faith argument for the establishment of new law.

{¶ 18} The Fourth "illegal meeting" was allegedly held in May 2011, during which Relator alleges that the Trustees discussed "status and employment" relationships with the

---

4. Lamb and Wade both filed affidavits, in which they deny that any discussion of Lamb stepping down so that McDonald could take his seat occurred. Instead, both stated that they gathered to discuss the possibility of a third party running for office once Lamb retired.

township administrator. Throughout the pendency of the proceedings, the record contains reference to Wade going with the township administrator to a third-person's personal office on the date that the fourth alleged meeting took place in order to listen to audio recordings related to an investigation of Anspach. However, no discussion was held with the administrator to discuss his employment with the township. Therefore, Relator's allegation was not warranted under existing law where there was no public business discussed, and Wade simply listened to audio recordings. Nor was Relator's fourth allegation supported by a good faith argument for an extension, modification, or reversal of existing law or a good faith argument for the establishment of new law.

{¶ 19} Relator's first four allegations were unwarranted, and no reasonable attorney would have filed a claim based upon them. Unlike a case where there was a tactical error founded in a belief that discovery would permit evidence to surface to support the claims, there was no possible violation of the OMA as alleged in Relator's first four allegations. Under the narrow set of facts before this court, we find that Relator's conduct in filing the first four claims was frivolous.

{¶ 20} Once conduct is determined frivolous, R.C. 121.22(I)(2)(b) requires a court "to award to the public body all court costs and reasonable attorney's fees, as determined by the court." During the hearing before the magistrate, Relator stipulated that the Trustees' attorney fees were reasonable. The magistrate ordered Relator to pay $2,014.83, which was approximately 20 percent of the total defense expenses.

{¶ 21} "Where a court is empowered to award attorney fees by statute, the amount of these fees is within the sound discretion of the trial court." *Kinder v. Smith*, 12th Dist. Warren No. CA2012-05-046, 2013-Ohio-2157, ¶ 16. According to R.C. 2323.51(B)(1), "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the

civil action or appeal." R.C. 2323.51(B)(3) further provides, "the amount of an award made pursuant to division (B)(1) of this section that represents reasonable attorney's fees shall not exceed, and may be equal to or less than, whichever of the following is applicable: (b) the attorney's fees that were reasonably incurred by a party."[5]

{¶ 22} The record indicates that the Trustees were forced to defend against the first four allegations, and incurred attorney fees as a result. After Relator stipulated to the reasonableness of the defense fees, the magistrate found that approximately 20 percent of the defense fees were specific to the first four allegations based upon the corresponding amount of work and resources expended by the defense, including depositions taken and filings made. The trial court adopted the magistrate's decision after Relator filed objections, and we find that the trial court did not abuse its discretion in awarding fees as it did. *See Dudley v. Dudley,* 196 Ohio App.3d 671, 2011-Ohio-5870, ¶ 20 (12th Dist.) (affirming trial court's order for appellant to pay 93 percent of appellees' attorney fees and costs as a sanction for frivolous conduct where the trial court determined that 93 percent of the defense fees were incurred because of the frivolous conduct).

{¶ 23} Relator also suggests that the fee award was improper because the township has not paid the fees. However, the Ohio Supreme Court has clearly expressed that the fees need only be *incurred*, regardless of whether such fees have been *paid* by the party who was subjected to the frivolous conduct. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350 (finding the fact that attorney fees were paid by an insurance fund irrelevant where the fees were nonetheless incurred by the aggrieved party). The Ohio Supreme Court also referenced fees as being "incurred" when such fees are "actually paid" or the party

---

5. R.C. 2323.51 was amended in 2005 to its current version, which requires only that the attorney fees be "reasonably incurred by a party" against whom the frivolous conduct occurred. Before the change, the statute required a showing that the fees requested were *necessitated* by the frivolous conduct. Therefore, Relator's claims in his brief that the fees were not necessitated by the alleged frivolous conduct are misplaced because the controlling version of the statute requires only that the fees be reasonably incurred.

- 8 -

becomes "obligated to pay." *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, ¶ 24. While the Trustees did not pay the attorney fees, the fees were paid by the insurance company that represents the Trustees. Therefore the fees have been "incurred" as anticipated by the Supreme Court, and the trial court did not abuse its discretion in ordering Relator to pay such fees.

{¶ 24} After reviewing the record, we find that the trial court properly found that Relator engaged in frivolous conduct by filing his claim based upon the first four allegations of nonpublic meetings. We also find that the trial court did not abuse its discretion in awarding attorney fees as it did. Therefore, Relator's single assignment of error is overruled.

{¶ 25} Judgment affirmed.

DINKELACKER, J., concurs.

FISCHER, J., concurs in part and dissents in part.

**FISCHER, J., concurring in part and dissenting in part.**

{¶ 26} While I agree with the majority's analysis and conclusion that Relator's fourth allegation was frivolous, I respectfully dissent from the decision that Relator's first three allegations constituted frivolous conduct.

{¶ 27} As correctly stated by the majority, courts must be careful not to deter legitimate claims when determining whether conduct is frivolous and may only base frivolous conduct on filings that are egregious, overzealous, or unjustifiable. *Cleveland v. Abrams*, 8th Dist. Cuyahoga No. 97814, 2012-Ohio-3957, ¶ 17. One legitimate concern inherent in any R.C. 2323.51 analysis is that a court must be mindful that finding conduct frivolous in "close" cases "would have a chilling effect on legitimate advocacy by discouraging aggressive representation by the attorney for the client." *Riston v. Butler*, 149 Ohio App.3d 390, 2002-

- 9 -

Ohio-2308, ¶ 38 (1st Dist.). Therefore, the high standard associated with R.C. 2323.51 requires that conduct be determined frivolous only if "it is absolutely clear under the existing law that no reasonable lawyer could argue the claim." *Miller v. Miller*, 5th Dist. Holmes No. 11CA020, 2012-Ohio-2905, ¶ 14.

{¶ 28} Another legitimate concern weighing on our analysis is that the public's right to enforce the Open Meetings Act is guarded jealously by law. As stated by the Ohio Supreme Court, "one of the strengths of American government is the right of the public to know and understand the actions of their elected representatives. This includes not merely the right to know a government body's final decision on a matter, but the ways and means by which those decisions were reached." *White v. Clinton Cty. Bd. of Commr's.,* 76 Ohio St.3d 416, 419 (1996).

{¶ 29} When taking into account the high hurdle associated with ordering sanctions, as well as the policy reasons behind it, I would find Relator's first three allegations were not frivolous. After reviewing the record, it is not absolutely clear that *no* reasonable attorney would have brought a claim, at the time the lawsuit was filed, based upon Relator's allegations that the Trustees engaged in nonpublic meetings. Relator's complaint alleged that the first three meetings occurred when certain trustees gathered to discuss the possibility of changing the makeup of the Clearcreek Township Board of Trustees so that the ousted trustee could continue to utilize insurance benefits -- a government provided benefit. While the majority characterizes this decision as purely political and personal to Trustee Lamb, it is reasonable to allege that a majority of trustees meeting together to discuss who would sit on the Board and who would utilize benefits provided by taxpayers and bestowed upon township trustees is pertinent township business.

{¶ 30} Relator's allegations as to the first three meetings were based upon statements Lamb allegedly made to the newly-elected Anspach. While Anspach had no personal

knowledge of the meetings, she shared alleged hearsay evidence, supposedly spoken to her by an actual meeting participant, that the so-called "nonpublic meetings" had occurred. Therefore, many reasonable attorneys might bring a claim to allege violations of the Open Meetings Act, and then perform discovery in an effort to evolve the hearsay statements into direct evidence. While, in hindsight, no evidence was deduced to support the allegations (and Relator even declined to prosecute the first four claims further), the test is whether any reasonable attorney would have brought the claim *at the time the claim is made*, rather than *after* discovery is performed.

{¶ 31} R.C. 2323.51 does not permit a court to find later-determined unsuccessful, or even ill-advised, claims frivolous, and instead, must first find that *no* reasonable attorney would have brought the claims at the time of the filing of the complaint in the first place. I do not agree that this high burden is met in the case at bar as to the first three counts, where Relator filed his claim based upon hearsay allegations that the trustees were engaging in nonpublic meetings.

{¶ 32} Given the close nature of this case, I cannot say that the record clearly indicates that Relator engaged in frivolous conduct by filing a claim based on his first three allegations. Therefore, I respectfully concur in part, and dissent in part.

Dinkelacker, J., of the First Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.

Fischer, J., of the First Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.