[Cite as *Towne Dev. Group, Ltd. v. Hutsenpiller Contrs.*, 2013-Ohio-4326.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|                                          |   |                          |
|------------------------------------------|---|--------------------------|
| TOWNE DEVELOPMENT GROUP, LTD,            | : |                          |
| Plaintiff-Appellant,                     | : | CASE NO.  CA2012-09-181  |
|                                          | : | O P I N I O N            |
| - vs -                                   |   | 9/30/2013                |
|                                          | : |                          |
| HUTSENPILLER CONTRACTORS, et al.,        | : |                          |
| Defendants-Appellees.                    | : |                          |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2011-03-0921


Dinsmore & Shohl, LLP, Rachael L. Rodman, Susan D. Solle, 1100 Courthouse Plaza SW, 10 North Ludlow Street, Dayton, Ohio 45402, for plaintiff-appellant

Lindhorst & Dreidame Co., LPA, Bradley D. McPeek, 312 Walnut Street, Suite 3100, Cincinnati, Ohio 45202, for defendants-appellees, Hutsenpiller Contractors and Milton Gene Hutsenpiller


**RINGLAND, P.J.**

{¶ 1} Plaintiff-appellant, Towne Development Group, LTD. (Towne), appeals a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Hutsenpiller Contractors, Inc. (Hutsenpiller Contractors) and Milton Hutsenpiller (Mr. Hutsenpiller) in a breach of contract action. For the reasons stated below, we affirm the judgment of the trial court.

{¶ 2} In November 2005, Towne, Hutsenpiller Contractors, W.E. Hines Company (Hines), and D.W. Griffin Company (Griffin) formed HTHG Development Company, Ltd. (HTHG). HTHG was a limited liability company and its purpose was to acquire and develop real estate located in Butler County. HTHG was owned by Towne and Hutsenpiller Contractors in 33.33 units each while Hines and Griffin owned the remaining 16.67 and 16.66 units respectively.

{¶ 3} The members/Unit Holders of HTHG, Towne, Hutsenpiller Contractors, Hines, and Griffin, executed an operating agreement that governed the company.[1] The agreement contemplated that HTHG was to pursue financing for its development efforts. The agreement contained several provisions which provided that members were to be responsible for the financial obligations of HTHG in the proportion of the member's respective ownership interest in the company. Therefore, Towne and Hutsenpiller Contractors would each be responsible for 33.33 percent of HTHG's loans while Hines and Griffin would be responsible for the residual 16.67 percent and 16.66 percent.

{¶ 4} The operating agreement also addressed the members' rights to contribution. Specifically, Section 4.10(b) of the agreement provided:

> To the extent any Unit Holder makes payment on (or collateral is applied toward the satisfaction of) any Authorized Guaranty in excess of his respective pro rata share (an "overpaying Unit Holder") as determined on the basis of the Unit Holder's division of liability * * * then the other Unit Holders (an "indemnifying Unit Holder(s)") shall indemnify and contribute and pay to the overpaying Unit Holder, within thirty (30) days after receiving written notice and substantiation of such payment, an amount equal to the excess over the pro rata responsibility of such overpaying Unit Holder paid by such overpaying Unit Holder.

---

1. For the purposes of this opinion, we will use "member" and "Unit Holder" interchangeably. The operating agreement defines "member" as any person set forth on Schedule I. Schedule I lists Griffin, Hines, Hutsenpiller, and Towne and describes the units each entity owns of HTHG. "Unit Holder" is defined as "any person who holds a Unit."

{¶ 5} The agreement goes on to detail the amount an indemnifying Unit Holder must contribute. It states the "indemnifying Unit Holder" must contribute "the amount, when added to all other amounts paid by such indemnifying Unit Holder in respect to such Authorized Guaranty, which equals such indemnifying Unit Holder's pro rata responsibility." However, if contribution cannot be obtained from an "indemnifying Unit Holder," the other Unit Holders, including the overpaying Unit Holders, shall each assume a portion of the defaulting Unit Holder's responsibility "on the basis of the pro rata responsibility of each remaining Unit Holder."

{¶ 6} Authorized guaranty is defined as, "any guaranty provided by one or more of the Members" for an obligation of [HTHG], when the obligation and guaranty by the member has been authorized by the Company "or any other payment by a Member in good faith against any obligation of the Company."

{¶ 7} On November 23, 2005, HTHG secured project financing through Peoples Community Bank and in connection with that financing, HTHG executed a $5,680,000 promissory note. The four members of HTHG, Towne, Hutsenpiller Contractors, Hines, and Griffin, each signed a limited guaranty for this loan. Additionally, the shareholders of Towne, Hutsenpiller Contractors, Hines, and Griffin were required to sign a guaranty for the HTHG loan. Mr. Hutsenpiller was among those required to sign a guaranty. Ultimately, Towne and its members, and Hutsenpiller Contractors and its member each guaranteed 33.33 percent of the note, while Hines and its member, and Griffin and its member, each guaranteed 16.66 percent of the note.

{¶ 8} Peoples Community Bank declared the HTHG loan in default in June 2009. Shortly thereafter, Peoples Community Bank assigned the HTHG loan to First Financial Bank. On February 10, 2010, Towne reached an agreement with First Financial on its guaranty obligations under the defaulted HTHG loan. Towne paid First Financial $1.3 million

of the total $5.68 million, to release Towne and its shareholders from its obligations under the HTHG loan. On February 11, 2010, Towne assigned to First Financial, Towne's entire membership interest in HTHG except for "any claims it may have against other Members of [HTHG] accruing prior to the effective date of this Assignment."

{¶ 9} On February 17, 2010, Towne made a written demand on Hutsenpiller Contractors and Mr. Hutsenpiller for contribution toward the $1.3 million that Towne had paid to First Financial. Additionally, Towne put Hutsenpiller Contractors on notice per the agreement, that, in the event that Hines and Griffin failed to pay their shares, Hutsenpiller Contractors and Mr. Hutsenpiller would be liable for an additional pro rata portion of their shares. Hutsenpiller Contractors did not respond to Towne's demands. Eventually, in May 2010, Hutsenpiller Contractors and its member settled with First Financial for $300,000. Neither Hines nor Griffin contributed any money to the First Financial settlement nor have they contributed any money to Towne or Hutsenpiller Contractors towards the settlement of the loan.[2]

{¶ 10} Towne filed a breach of contract action against Hutsenpiller Contractors and Mr. Hutsenpiller arguing that pursuant to the operating agreement, it was owed contribution. Specifically, Towne argued that Hutsenpiller Contractors owed Towne 33.33 percent of the total settlement amount, less the amount Hutsenpiller Contractors paid First Financial.[3] Towne also asserted that it and Hutsenpiller Contractors must split the obligation of the nonpaying Unit Holders, Griffin and Hines. Further, Towne argued that Mr. Hutsenpiller was personally liable for the debts owed by Hutsenpiller Contractors.

{¶ 11} On February 17, 2012, the parties filed cross-motions for summary judgment.

2. Hines and Griffin are not parties to this appeal.

3. It appears at the time of the complaint Towne was unaware that Hutsenpiller Contractors paid First Financial $300,000 to settle the debt. While in the complaint, Towne requested that Hutsenpiller pay one-third of the total debt, it later argued that Hutsenpiller should pay one-third minus the payments it made to First Financial.

Both parties advanced a number of theories as to why Hutsenpiller Contractors and Mr. Hutsenpiller were or were not liable for contribution to Towne. The trial court denied Towne's motion for summary judgment and granted Hutsenpiller Contractor's motion for summary judgment. The court reasoned that Towne could not pursue its claim because Towne had assigned its membership rights to First Financial when it settled its obligation under the HTHG loan. The court found that the exception in the assignment which preserved Towne's right to any claims against other members that "accrued" prior to the date of the assignment did not protect its contribution right because under the terms of the operating agreement, the contribution claim did not accrue until thirty days after Hutsenpiller received written notice and substantiation of the payment.

{¶ 12} Towne appeals the trial court's decision, asserting a sole assignment of error:

{¶ 13} THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT IN FAVOR OF APPELLANT TOWNE DEVELOPMENT COMPANY AND IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES HUTSENPILLER CONTRACTORS, INC. AND [MR.] HUTSENPILLER.

{¶ 14} Towne advances several arguments on appeal as to why the trial court erred in denying its motion for summary judgment and granting summary judgment in favor of Hutsenpiller Contractors and Mr. Hutsenpiller. Towne argues the trial court erred in finding the assignment to First Financial precluded Towne's claim against Hutsenpiller Contractors. Towne also asserts that the HTHG operating agreement allows it to seek contribution from Hutsenpiller Contractors and Mr. Hutsenpiller for their share of the total HTHG loan settlement. On the other hand, Hutsenpiller Contractors argues that because Towne never paid more than its original obligation to First Financial in the settlement, it cannot seek contribution under the terms of the agreement. The parties also make a number of other arguments regarding Towne's ability to seek contribution against Mr. Hutsenpiller individually

and an alleged series of conversations where Towne waived its contribution right against Hutsenpiller Contractors.

{¶ 15} This court's review of a trial court's ruling on a summary judgment motion is de novo, which means that we review the judgment independently and without deference to the trial court's determination. *Simmons v. Yingling*, 12th Dist. Warren No. CA2010-11-117, 2011-Ohio-4041, ¶ 18, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 296 (8th Dist.1998). We utilize the same standard in our review that the trial court uses in its evaluation of the motion.

{¶ 16} Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Williams v. McFarland Properties*, *L.L.C.*, 177 Ohio App.3d 490, 2008-Ohio-3594, ¶ 7 (12th Dist.). To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party must then present evidence that some issue of material fact remains to be resolved; it may not rest on the mere allegations or denials in its pleadings. *Id.* All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.*, 21 Ohio St.2d 25, 28 (1970).

{¶ 17} This case involves the interpretation of the HTHG operating agreement. In reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *O'Bannon Meadows Homeowners Assn., Inc. v. O'Bannon Properties*, *L.L.C.*, 12th Dist. Clermont No. CA2012-10-073, 2013-Ohio-23 95, ¶ 19, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). In ascertaining the intent of the parties,

the court must presume that the intent resides in the language the parties chose to employ in the agreement. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997). "A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." *Cooper v. Chateau Estate Homes, L.L.C.*, 12th Dist. Warren No. CA2012-07-061, 2010-Ohio-5186, ¶ 12.

{¶ 18} After a review of the operating agreement, we find that the agreement does not allow for Towne to seek contribution from Hutsenpiller Contractors or Mr. Hutsenpiller for the settlement of the HTHG loan. Pursuant to the plain language of the operating agreement, a Unit Holder that makes a payment on an authorized guaranty in *excess* of his pro rata share is entitled to contribution from other Unit Holders. Additionally, the $5.68 million loan from First Financial qualifies as an "authorized guaranty" as it was a guaranty authorized by HTHG and provided by the company. Towne's pro rata share of the liability is determined by its proportion of its ownership interest. Towne owned 33.33 units of HTHG and its share of the HTHG loan was 33.33 percent. Therefore, under the terms of the operating agreement, Towne was directly liable for 33.33 percent of the $5.68 million dollar loan, or $1,893,144. However, Towne settled its obligation under the HTHG debt with First Financial for $1,300,000, nearly $600,000 less than its 33.33 percent liability of the loan. Consequently, the plain language of the agreement provides that Towne cannot seek contribution from Hutsenpiller Contractors or Mr. Hutsenpiller because it did not make a payment on the $5.68 million dollar liability that was in excess of its pro rata share.

{¶ 19} Towne disagrees with the interpretation of the operating agreement as requiring contribution only when a Unit Holder pays more than its pro rata share of the total $5.68 million loan. Instead, Towne argues that the operating agreement requires that Hutsenpiller Contractors contribute its pro rata share of the total *settlement* amount. In support of this

position, Towne argues that the operating agreement provides that *any* payment made on an "authorized guaranty" shall be borne by the members in proportion of their ownership interest. Towne points to the definition of "authorized guaranty" as a payment towards an HTHG loan. Therefore, Towne argues that its $1.3 million payment to First Financial was an "authorized guaranty" and it should only be responsible for its pro rata share of this amount. Towne maintains that Hutsenpiller Contractors' interpretation of the contract as requiring contribution only when payments exceed the Unit Holder's share of the *total obligation* is incorrect. It argues the continuing guaranties between First Financial and the members and the operating agreement did not contemplate that a party would pay more than its pro rata share of the total $5.68 million liability. Therefore, pursuant to the terms of the guaranty and operating agreement, a Unit Holder's liability can never exceed its pro rata share.

{¶ 20} We are not persuaded by Towne's arguments. Towne's interpretation of the contract as requiring contribution when a Unit Holder makes *any* payment towards an obligation is not supported by the contract. While "authorized guaranty" is defined as any payment made by a member against an HTHG obligation, Towne's reading of the contract renders the language "in excess" meaningless. Under Towne's construction, every time a party makes a payment, it would be entitled to contribution. Therefore, there would be no purpose for using the word "excess" because under Towne's construction, every payment made by a party would be in excess of its share.

{¶ 21} Instead, we find that the clear and unambiguous meaning of the operating agreement is that a member is entitled to contribution only when its payment is in excess of its pro rata share of the *total obligation*. While the continuing guaranties and section 4.10(a) of the operating agreement provide that a party will not pay more than its pro rata share of the total liability, the plain language of section 4.10(b) states that a member is entitled to contribution only when it pays in *excess* of its share. If the members intended for their

contribution rights to be different, they could have chosen different language. In this case, Towne is not entitled to contribution as its $1.3 million settlement was not in excess of its share of the total $5.68 million obligation.

{¶ 22} Because Towne did not make a payment in excess of its share of the $5.68 million HTHG loan, Towne is not entitled to contribution from Hutsenpiller Contractors or Mr. Hutsenpiller. Additionally, because we find that Towne did not make a payment in excess of its share, entitling it to contribution, neither Hutsenpiller Contractors nor Mr. Hutsenpiller must pay a pro rata share of Hines and Griffin's portion of the settlement amount. Lastly, because we find that Hutsenpiller Contractors and Mr. Hutsenpiller do not owe any contribution monies, we decline to address the parties' remaining arguments. Consequently, the trial court did not err in granting summary judgment in favor of Hutsenpiller Contractors and Mr. Hutsenpiller, and denying Towne's summary judgment motions.

{¶ 23} Towne's sole assignment of error is overruled.

{¶ 24} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.