[Cite as *Ownerland Realty, Inc. v. Zhang*, 2014-Ohio-2585.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| OWNERLAND REALTY, INC., | : | |
| | | CASE NOS. CA2013-09-077 |
| Plaintiff-Appellant, | : | CA2013-10-097 |
| | : | O P I N I O N |
| - vs - | | 6/16/2014 |
| | : | |
| LEMIN ZHANG, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 12 CV 82595

Jason Phillabaum & Associates LLC, Jason R. Phillabaum, 810 Sycamore Street, 5th Floor, Cincinnati, Ohio 45202, for plaintiff-appellant

Graydon Head & Ritchey LLP, Michael A. Roberts, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202, for defendants-appellees, Lemin & Liping Zhang

**HENDRICKSON, J.**

{¶ 1} Plaintiff-appellant, Ownerland Realty, Inc., appeals from decisions in the Warren County Court of Common Pleas granting summary judgment to defendants-appellees, Lemin and Liping Zhang (Homeowners), and awarding attorney fees to Homeowners in an action involving claims of breach of contract, unjust enrichment, and fraudulent inducement. For the reasons outlined below, we affirm in part and reverse in part the decision of the trial court granting summary judgment to Homeowners and reverse the

decision of the trial court awarding Homeowners attorney fees.

{¶ 2}   Ownerland is a company involved in the sale of real estate in Ohio.  When Homeowners planned to sell their residential property located on Cherrydale Court in Mason, Ohio and relocate to the Washington, D.C. area, they utilized Ownerland as an exclusive listing agent.  In the course of their relationship, Ownerland and Homeowners signed two exclusive-right-to-sell contracts and a cancellation agreement relating to the property.

{¶ 3}   The first contract was signed by Ownerland and Homeowners on January 31, 2012 giving Ownerland the exclusive right to sell Homeowners' property.[1]  The first contract also provided that Ownerland would receive a two percent commission from the sale of the property.  An additional three percent commission was to be provided to the buyer's agent. Paragraph 14 provided a protection period of 90 days after the expiration date of the contract whereby Ownerland would still be entitled to the commission.  Pursuant to paragraph 14, Ownerland would only be entitled to the commission if Homeowners acted as their own agent in the sale of the property and had not listed the property exclusively with another broker. The first contract was set to expire on July 31, 2012.  The second contract was signed by Ownerland and Homeowners on May 2, 2012.  Except for the listing price, the second contract possessed identical provisions to the first contract and was to expire on August 2, 2012.

{¶ 4}   The parties signed a cancellation agreement on May 31, 2012.  This document states: "The undersigned agree that the Exclusive Right to Sell Agreement entered into by the parties on * * * 2/1/2012 * * * is **cancelled** as of * * * 5/31/2012 * * *.  The parties further agree that neither party has any further obligation or responsibility to each other, except: [.]"

---

1. While the first contract was signed on January 31, 2012, the cancellation agreement references a date of February 1, 2012.  It does not appear that the parties dispute that the date in the cancellation agreement references the first contract signed by the parties.

(Emphasis sic.)  Following the word "except," the space is blank.

{¶ 5}   On June 1, 2012, almost immediately after signing the cancellation agreement, Homeowners entered an exclusive-right-to-sell contract with Home Wise Real Estate, LLC. On or about July 13, 2012, the property sold for $437,500.  A two percent commission of $8,750 was never paid to Ownerland.

{¶ 6}   On August 2, 2012, Ownerland filed a complaint alleging breach of contract, unjust enrichment, and fraudulent inducement.  Ownerland argued that the cancellation agreement signed by the parties only canceled the Multiple Listing Service (MLS) listing of the property and did not affect its exclusive right to sell.  Consequently, Ownerland asserted that it was entitled to commission from the sale.

{¶ 7}   On April 18, 2013, Homeowners filed a motion for summary judgment. Homeowners argued that Ownerland was not entitled to any commission because the cancellation agreement signed by the parties cancelled both exclusive-right-to-sell contracts.  Furthermore, Homeowners contended that the claim of unjust enrichment was an improper theory of recovery because a contract governed the relationship of the parties and there was no evidence to support a fraud claim.

{¶ 8}   The trial court granted Homeowners' motion for summary judgment.  The trial court found that Homeowners did not breach any contract with Ownerland as the cancellation agreement effectively cancelled the exclusive-right-to-sell contracts and nullified the protection clause.  Furthermore, the trial court found that Ownerland could not recover under a theory of unjust enrichment or fraud because an express contract was involved. Additionally, following a hearing regarding attorney fees, the trial court determined that the contract claim was not based on existing law and was frivolous.  The trial court stated that Ownerland could have dismissed the complaint upon completion of discovery when it realized it had prepared the cancellation agreement and did not provide any reservations.

- 3 -

The trial court also found that Ownerland misused the court process to try to collect a commission to which it clearly was never entitled because it knew it had a logistical advantage over Homeowners who had moved outside of Ohio. As a result of finding Ownerland's contract claim frivolous, judgment was entered ordering Ownerland to pay Homeowners $6,318.32 in attorney fees.

{¶ 9} Ownerland now appeals and asserts two assignments of error for review.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST PLAINTIFF OWNERLAND REALTY.

{¶ 12} Ownerland sets forth three independent arguments as to why the trial court erred in granting Homeowners' summary judgment motion. First, Ownerland argues that there is a genuine issue of material fact regarding the parties' intent in signing the cancellation agreement. Second, Ownerland contends that there is a genuine issue of material fact as to whether Homeowners misrepresented their intention as to why they wanted to sign the cancellation agreement. Ownerland thus argues that it was fraudulently induced into signing the cancellation agreement. Third, Ownerland asserts that all three conditions were met for Ownerland to recover damages from Homeowners on the basis of unjust enrichment.

{¶ 13} Summary judgment is a procedural device used to terminate litigation and avoid a formal trial when there are no issues in a case to try. *Norris v. Ohio Standard Oil Co.*, 70 Ohio St.2d 1, 2 (1982). This court's review of a trial court's ruling on a summary judgment motion is de novo. As such, we review the trial court's judgment independently and without deference to its determinations. *BAC Home Loans Servicing, L.P., v. Hall*, 12th Dist. Warren No. CA2009-10-135, 2010-Ohio-3472, ¶ 11.

{¶ 14} A trial court may grant summary judgment only when: (1) there is no genuine

issue of any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978). The party moving for summary judgment bears the burden of demonstrating no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). The nonmoving party must then present evidence, by affidavit or otherwise, to show that there is some issue of material fact yet remaining for the trial court to resolve. *Id.* at 293; Civ.R. 56. A material fact is one which would affect the outcome of the suit under the applicable substantive law. *Hillstreet Fund III, L.P. v. Bloom*, 12th Dist. Butler No. CA2009-07-178, 2010-Ohio-2961, ¶ 9. In deciding whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10.

{¶ 15} Ownerland argues that there is an ambiguity in the cancellation agreement because the intent of the parties was only to cancel the MLS agreement and keep the contractual relationship regarding the exclusive right to sell in place. Ownerland asserts special circumstances surrounded the agreement because Homeowners stated to Ownerland's agent that they were going to rent the property rather than sell the property. Furthermore, Ownerland asserts that it logically should maintain its status as the exclusive listing agent for the property because it spent time and money marketing the home. We find that Ownerland's arguments are contrary to the clear meaning of the words utilized in the cancellation agreement.

{¶ 16} In reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *O'Bannon Meadows Homeowners Assn., Inc. v. O'Bannon Properties, L.L.C.*, 12th Dist. Clermont No. CA2012-10-073, 2013-Ohio-2395, ¶ 19, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). In

ascertaining the intent of the parties, the court must presume that the intent resides in the language the parties chose to employ in the agreement. *Towne Dev. Group, Ltd. v. Hutsenpiller Contrs.*, 12th Dist. Butler No. CA2012-09-181, 2013-Ohio-4326, ¶ 17, citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997). "A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132 (1987). When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Safe Auto Ins. Co. v. Semenov*, 192 Ohio App.3d 37, 2011-Ohio-163, ¶ 8 (12th Dist.).

{¶ 17} In this instance, the cancellation agreement specifically states that an "Exclusive Right to Sell Agreement" is being cancelled. It does not say that a MLS listing is cancelled as Ownerland contends. Ownerland asserts that if the cancellation agreement terminates the first exclusive-right-to-sell contract, then the second exclusive-right-to-sell contract remains in effect. Nevertheless, the cancellation agreement states "neither party has *any* further obligation or responsibility to each other * * *." (Emphasis added.) It is clear from the writing itself that the parties intended to sever obligations and responsibilities to one another, which would include the second exclusive-right-to-sell contract. If Ownerland wanted to limit the scope of the cancellation agreement or document any special circumstances surrounding the cancellation agreement it should have done so in the cancellation agreement itself in the space provided. Because the cancellation agreement clearly and unambiguously terminated any obligations Homeowners had to Ownerland, there is no genuine issue of material fact regarding Ownerland's contract claim and Homeowners are entitled to judgment as a matter of law.

**{¶ 18}** Ownerland next argues that the trial court erred in granting summary judgment to Homeowners because Homeowners fraudulently induced Ownerland to sign the cancellation agreement. Ownerland contends that it detrimentally relied on Homeowners' statement that they were going to rent the property rather than sell it. Homeowners, on the other hand, state that they did not tell Ownerland's agent that they were going to rent the property, but that they were going to pursue "all options." We find that the conflict in statements creates a genuine issue of material fact precluding summary judgment.

**{¶ 19}** To prevail on a fraudulent inducement claim, one must establish (1) a false representation concerning a fact, (2) knowledge of the falsity of the representation or utter disregard for its truthfulness, (3) intent to induce reliance on the representation, (4) justifiable reliance upon the representation, and (5) injury proximately caused by the reliance. *Togo Internatl., Inc. v. Mound Steel Corp.*, 106 Ohio App.3d 282, 286 (12th Dist.1995), citing *Mussivand v. David*, 45 Ohio St.3d 314, 322 (1989). *Buchanan v. Improved Properties, LLC*, 3d Dist. Allen No. 1-13-38, 2014-Ohio-263, ¶ 16. The question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties. *Togo* at 286. Reliance is justifiable if the representation does not appear unreasonable on its face and if, under the circumstances, there is no apparent reason to doubt the veracity of the representation. *Id.* at 287.

**{¶ 20}** In this instance, Homeowners established through an affidavit that they were growing increasingly dissatisfied with Ownerland, resulting in the mutual signing of the cancellation agreement. Homeowners averred that prior to signing the cancellation agreement they told Ownerland's agent that they still needed to sell the property but were contemplating "all options," including renting the property. In response, Ownerland's agent averred that Homeowners had represented that they were going to rent the property rather than sell and that is why they were taking the property off the MLS listing.

**{¶ 21}** When construing the evidence most favorably to Ownerland, the disagreement as to Homeowners' statement creates a genuine issue of material fact. If Ownerland's version of events is believed, then Homeowners planned to rent the property. Homeowners admitted in an affidavit that renting was a possibility. Nevertheless, the day after entering the cancellation agreement with Ownerland, Homeowners entered an exclusive-right-to-sell contract with another real estate company. Consequently, construing the evidence in Ownerland's favor, Homeowners made a false representation of a fact that resulted in Ownerland losing commission from the sale of the property. Absent signing the cancellation agreement, both exclusive-right-to-sell contracts would have been in place at the time of the sale. The evidence also creates an issue of fact as to whether Homeowners knew of the falsity of their representation to Ownerland and whether Homeowners intended to induce reliance on the false representation.

**{¶ 22}** Additionally, Homeowners averred that they were growing increasingly dissatisfied with Ownerland. However, the emails between Homeowners and Ownerland attached to Homeowners' affidavit indicate that Homeowners continued to work with Ownerland to sell their property until Ownerland's agent sent an email asking Homeowners to sign and date a "Release/Cancel Listing Agreement" in order to take their "listing off the market." Construing the evidence most favorably to Ownerland, the relationship between the parties appeared amicable and there is a question of fact as to whether reliance on Homeowner's representation was reasonable. Consequently, reasonable minds can conclude that it is possible for Ownerland to meet the elements of fraudulent inducement. Accordingly, Homeowners were not entitled to judgment as a matter of law and summary judgment in favor of Homeowners regarding Ownerland's fraudulent inducement claim was improper.

**{¶ 23}** Ownerland last asserts that it would be unjust for Homeowners to retain the

benefit of the selling their home without compensating Ownerland. Ownerland contends that it engaged in several marketing efforts, including listing the property on the MLS, creating a virtual tour, and employing multiple photographers, all of which resulted in the sale of Homeowners' property. We find that Ownerland failed to meet its burden to survive summary judgment regarding its unjust enrichment claim.

{¶ 24} A party may recover damages under a theory of unjust enrichment if he or she can establish that "(1) his or her actions conferred a benefit on the defendant, (2) the defendant knew of the benefit that had been conferred upon him or her, and (3) it would be unjust to allow the defendant to retain the benefit conferred upon him or her without requiring the defendant to pay for that benefit." *Leesburg Fed. Sav. Bank v. McMurray*, 12th Dist. Fayette No. CA2012-02-002, 2012-Ohio-5435. Nevertheless, a party pursuing relief for breach of contract cannot at the same time seek equitable relief for unjust enrichment. *Weiper v. W.A. Hill & Assoc.*, 104 Ohio App.3d 250, 262, 661 (1st Dist.1995). In the absence of fraud, illegality or bad faith, where a contract describes the nature of services to be rendered and the compensation to be paid, plaintiffs are entitled to compensation only in accordance with the terms of the agreement. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989), citing *Ullman v. May,* 147 Ohio St. 468 (1947), paragraph three of the syllabus.

{¶ 25} In this instance, the terms of the exclusive-right-to-sell contracts provided for the compensation of Ownerland during the exclusive listing period and also provided a protection period of 90 days. As stated above, the cancellation agreement specified that "neither party has any further obligation or responsibility to each other * * *." While the exclusive-right-to-sell contracts provided for the compensation of Ownerland for its marketing efforts resulting in the sale of the property, any obligations were terminated per the cancellation agreement. Nevertheless, summary judgment was proper even if Homeowners

fraudulently induced Ownerland to sign the cancellation agreement. The only evidence presented by Ownerland was the affidavit of its real estate agent stating Ownerland engaged in certain marketing efforts for which it advanced the cost. There was no evidence presented indicating that the alleged benefit conferred on Homeowners of the sale of their property was actually a result of Ownerland's marketing efforts. Consequently, Ownerland failed to establish a genuine issue of material fact and Homeowners are entitled to summary judgment as a matter of law on Ownerland's unjust enrichment claim.

{¶ 26} Ownerland's first assignment of error is overruled as to the contract and unjust enrichment claims. Ownerland's first assignment of error is sustained as to the fraudulent inducement claim.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES AND COSTS.

{¶ 29} Ownerland asserts that the trial court erred in finding its breach of contract claim frivolous and awarding Homeowners attorney fees. Specifically, Ownerland argues that its breach of contract claim was not "wholly unwarranted," but was rather a justified interpretation of Ohio law based on the language of the exclusive-right-to-sell contracts and the actions of the parties. We agree with Ownerland.

{¶ 30} Reviewing a trial court's decision regarding frivolous conduct involves mixed questions of law and fact. *Lucchesi v. Fischer*, 12th Dist. Clermont No. CA2008-03-023, 2008-Ohio-5935, ¶ 4. A trial court's factual determinations are accorded a degree of deference and will not be disturbed on appeal if there is competent, credible evidence in the record to support them. *State ex rel. Chrisman v. Clearcreek Twp.*, 12th Dist. Warren No. CA2013-03-025, 2014-Ohio-252, ¶ 8. De novo review, however, is utilized to review legal questions, such as a whether a party's conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of

existing law. *Dudley v. Dudley*, 196 Ohio App.3d 671, 2011-Ohio-5870, ¶ 11 (12th Dist.), citing *Ferron v. Video Professor, Inc.*, 5th Dist. Delaware No. 08-CAE-09-0055, 2009-Ohio-3133, ¶ 44.

{¶ 31} R.C. 2323.51(B)(1) provides that a trial court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with a civil action to a party adversely affected by frivolous conduct. Courts must be careful not to deter legitimate claims when determining whether conduct is frivolous. *Chrisman* at ¶ 10. The statute "is designed to chill egregious, overzealous, unjustifiable, and frivolous action." *Cleveland v. Abrams*, 8th Dist. Cuyahoga No. 97814, 2012-Ohio-3957, ¶ 17. The question to ask when determining whether a claim is frivolous is "whether no reasonable lawyer would have brought the action in light of the existing law." *Chrisman* at ¶ 10, quoting *Cleveland* at ¶ 17. As such, R.C. 2323.51 applies an "objective standard in determining frivolous conduct, as opposed to a subjective one" and thus frivolous conduct "is determined without reference to what the individual knew or believed." *Chrisman* at ¶ 10.

{¶ 32} In this instance, the trial court determined that Ownerland's conduct was frivolous under R.C. 2323.51(A)(2)(a)(ii). R.C. 2323.51(A)(2)(a)(ii) provides that conduct is frivolous when it is "not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law."

{¶ 33} While we find the cancellation agreement clear and unambiguous, we nevertheless find Ownerland's breach of contract argument legitimate. According to Ohio law, when a contract is clear and unambiguous, extrinsic evidence is not needed to determine the intent of the parties. Nevertheless, even without resorting to extrinsic evidence, a legitimate argument can be made that the cancellation agreement only terminated the first exclusive-right-to-sell contract as that was the contract specifically

referenced in the agreement. It was proper for a court of law to determine the effect of the cancellation agreement on the second exclusive-right-to-sell contract even though Ownerland's contract claim appropriately failed to survive summary judgment. Consequently, we find the trial court erred in finding Ownerland's contract claim frivolous and awarding Homeowners attorney fees. Ownerland's second assignment of error is sustained.

{¶ 34} Judgment affirmed in part and reversed in part. Judgment is affirmed as to the grant of summary judgment to Homeowners on Ownerland's claims based on contract and unjust enrichment. Judgment is reversed as to granting summary judgment to Homeowners on Ownerland's claim based on fraudulent inducement and finding Ownerland's contract claim frivolous. We hereby vacate the award of attorney fees to Homeowners.

RINGLAND, P.J., and M. POWELL, J., concur.