[Cite as *In re T.D.A.J.*, 2015-Ohio-4919.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| T.D.A.J. | : | CASE NO.   CA2015-04-075 |
| | : | O P I N I O N<br>11/30/2015 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JS2009-1389

The Lampe Law Office, LLC, Adam C. Gedling, 1248 Nilles Road, Suite 7, Fairfield, Ohio 45014, for appellant J.A.

Fred S. Miller, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for appellee, A.J.D.

**HENDRICKSON, J.**

{¶ 1}   Appellant, J.A. (Father), appeals from a decision of the Butler County Court of Common Pleas, Juvenile Division, denying his motion to find appellee, A.J.D. (Mother), in contempt for failing to file a notice of relocation and ordering him to pay Mother's attorney fees.  For the reasons set forth below, we affirm in part, reverse in part, and vacate the award of attorney fees to Mother.

**FACTS**

{¶ 2}  Mother and Father are the biological parents of T.D.A.J.  The two were never married.  In July 2010, following a contested hearing, the juvenile court determined the allocation of parental rights and responsibilities.  Mother was designated the residential parent and Father was granted parenting time.  At this time, Mother resided in Oxford, Ohio and Father resided in Hamilton, Ohio.  The court's order allocating parental rights and responsibilities provided that "[n]either parent shall permanently remove the child(ren) from the jurisdiction of this court without first filing a notice of relocation.  This notice must first be served upon the non-moving party and must comply with Ohio law and must comply with the local rules of this court."

{¶ 3}  In the summer of 2013, Mother married and filed a notice of her intent to relocate with her new husband, Charles, and T.D.A.J. to an apartment in Manhattan, Illinois (the Manhattan rental) on or about August 4, 2013.  Father responded to Mother's notice of relocation by filing a motion for an ex parte order awarding him temporary custody of T.D.A.J., a motion for legal custody of T.D.A.J., and a motion to restrict or prohibit T.D.A.J. from relocating with Mother outside Butler County.  On July 19, 2013, the juvenile court issued an emergency ex parte order prohibiting Mother from permanently removing the child from the jurisdiction of the court and scheduled a hearing on Father's motions.  After holding a hearing on August 7, 2013, the juvenile court vacated its order prohibiting Mother from permanently removing the child from the court's jurisdiction.  Mother subsequently moved with the child to Manhattan, Illinois and filed a motion to modify Father's visitation with the child.

{¶ 4}  Mother and Father were able to reach an agreement as to Father's motion for legal custody and Mother's motion to modify visitation.  Father's motion for legal custody was withdrawn, and a new order governing Father's visitation was entered on the record.

Pursuant to the juvenile court's September 16, 2013 order, the new schedule for visitation took immediate effect. The September 16, 2013 order also provided that "[a]ll orders issued previously in this case which are not inconsistent with the orders issued herein shall remain in effect pending further proceedings by this court."

{¶ 5} After Mother's move to Manhattan, the parties experienced difficulties in facilitating T.D.A.J.'s visitations with Father. This resulted in multiple motions for contempt being filed by the parties. As relevant to this appeal, Father filed a motion for contempt and motion for attorney fees on August 25, 2014, in which he asserted Mother was in violation of the court's July 2010 order allocating parental rights and responsibilities. Specifically, Father claimed Mother had violated the court's order by relocating with T.D.A.J. to Mokena, Illinois without filing a notice of her intent to relocate and without giving him prior notice of the move. According to Father's motion, he first learned of the move on August 15, 2014, when his son mentioned the move during a phone conversation. Five days after this phone call, Mother sent Father a text message informing him that her lease had expired, she was temporarily living at a new residence, and she was looking to purchase a house. Mother also informed Father she had not yet filed a notice of her intent to relocate with the court, but intended to do so. As a result of Mother's move, Father sought an order holding Mother in contempt of court and ordering her to pay all court costs and attorney fees associated with the motion.

{¶ 6} On August 26, 2014, the day after Father filed his motion for contempt, Mother filed with the juvenile court a Notice of Intent to Relocate. In her notice, Mother stated that on August 14, 2014, she, her husband, Charles, and T.D.A.J. moved to a residence in Mokena, Illinois. On September 9, 2014, Mother filed another Notice of Intent to Relocate. In this notice, Mother stated she, Charles, and T.D.A.J. anticipated relocating on September 30, 2014, to a residence in New Lenox, Illinois. Mother also filed a motion for attorney fees, requesting the juvenile court order Father to pay the attorney fees she incurred in defending

against Father's August 25, 2014 motion for contempt on the grounds that Father's motion was frivolous. Mother argued that even if she had provided late notice to Father about her move, "the late notice did not affect [F]ather in any way" as Father's visitation rights were not interfered with and T.D.A.J.'s school remained the same. Mother claimed Father filed the contempt motion merely to harass her.

{¶ 7} A hearing on Father's motions for contempt and attorney fees and on Mother's motion for attorney fees was held before a magistrate on January 28, 2015. Mother, Mother's husband, and Father testified at the hearing.

{¶ 8} Mother testified her lease on the Manhattan rental originally expired on August 1, 2014, but she was able to get an extension until August 15, 2014. In July 2014, prior to her lease expiring, she and Charles began looking into purchasing a home. Despite knowing in July 2014, that she intended to move out of the Manhattan rental, Mother never notified Father or the juvenile court about her intent to relocate.

{¶ 9} Mother stated that in July 2014, she and her husband put in an offer on a home in New Lenox, Illinois (the New Lenox residence). Negotiations on this property took longer than what was originally anticipated, and the New Lenox residence was not secured by the time the lease on the Manhattan rental expired. As a result, on August 14, 2014, Mother, Charles, and T.D.A.J. moved in with Mother's in-laws in a home in Mokena, Illinois (the Mokena residence). Mother did not notify Father or the juvenile court of her move until after it had occurred. On August 20, 2014, Mother sent Father the following text message informing him of the move:

> [Father], I want to let you know that [Charles] and I are looking for a new home, and until we are able to get one, we will be staying with [Charles'] parents [in] * * * Mokena, IL 60448. We had been hoping to purchase a home in New Lenox, IL, but the contract fell through. In the meantime, our lease finished up so we are living with his parents. Their home is about 11.6 miles from our former address in Manhattan and 1.9 miles from [T.D.A.J.'s] school. I

will be filing a Notice of Intent to Relocate in order to formally let you know of our current address and I will file another notice when we know what our permanent address will be. It is our intention for our new home to not be far from our old home. It is also our intention for none of these homes to disrupt [T.D.A.J.'s] school; he will continue attending the same school as when we first moved here (St. Mary's). We will also not need to change any of your visitation schedule as a result of these moves. Thanks.

{¶ 10} Mother explained she did not notify Father of her move to her in-laws' home in Mokena, Illinois right away because it did not occur to her to tell Father. She further explained,

"Honestly I didn't, I truly didn't know that unless I had something like concrete, like a permanent address that it, it seemed like a move that, it was temporary and it was not, didn't change visitations or [T.D.A.J.'s] school or activities or anything and honestly I truly, it was an honest mistake truly."

{¶ 11} Charles testified he and Mother knew by late May or early June that they wanted to buy a home. They settled on purchasing the New Lenox home sometime between July 20 and July 23, 2014. They put in an offer on the New Lenox home, but experienced problems with the sellers. As of August 11, 2014, Charles and Mother knew they would be moving in with his parents in Mokena. Charles stated he, Mother, and T.D.A.J. remained at the Mokena residence until moving into the New Lenox residence on November 24, 2014.

{¶ 12} Father testified he first learned of Mother and T.D.A.J.'s move from the Manhattan rental on August 15, 2014, during a phone conversation with T.D.A.J. Father explained that upon learning of this move, he immediately contacted his attorney because "not knowing where my child was particularly [concerning]." Father testified he did not know who his son was living with at the time. Nonetheless, Father admitted he did not attempt to contact Mother about her whereabouts or her new residence.

{¶ 13} On August 20, 2014, five days after he spoke with T.D.A.J., Father received a text message from Mother about the move to her in-laws' home in Mokena. This was the first

time Mother informed Father about the move. After receiving this text message, Father filed his motion for contempt. According to Father, in addition to being concerned "for [T.D.A.J.'s] safety and well-being," he had concerns about Mother's refusal to abide by the court's orders. Father stated the purpose behind his filing of his contempt motion was to get Mother to comply with the court's orders. Father testified, "we have rules to follow and they're not being followed." On cross-examination, Father admitted Mother and T.D.A.J.'s move to the Mokena residence did not affect his ability to contact or visit with his son.

{¶ 14} In addition to the forgoing testimony, the parties also introduced into evidence documents related to Mother's purchase of the New Lenox residence, emails exchanged between Mother, Charles, and their realtor, the August 20, 2014 text message Mother sent to Father, and affidavits by the parties' attorneys regarding the fees incurred in representing them on the contempt motion.

{¶ 15} After considering the foregoing evidence, the magistrate issued a decision denying Father's motion for contempt and his request for attorney fees and granting Mother's motion for attorney fees. In denying Father's motion for contempt, the magistrate found that although "Mother should have notified Father immediately that she was moving into her in-laws' [home]," Mother had nonetheless kept Father updated regarding the location of their son and her status of finding a residence. The magistrate further found that "Mother did not disobey any order of this court" as "Mother could not file a notice to relocate with the court [since] she could not provide the court with an address as required by the notice." Finally, the magistrate found Father's substantive parental rights had not been affected by Mother's actions and Father's motion for contempt was "frivolous [as] bringing this matter before the court was a waste of the court's time and resources. The money spent by the parties would have been better spent on the child." Father was ordered to pay Mother's attorney fees in the amount of $2,480.

{¶ 16} In response to the magistrate's decision, Father filed a motion for findings of fact and conclusions of law. Father also filed timely objections to the magistrate's decision, in which Father objected to the Magistrate's findings that Mother could not file a notice of her intent to relocate with the court prior to her move and that Mother had not disobeyed the court's July 2010 order. Father also objected to the magistrate's finding that his motion for contempt was frivolous and a waste of the court's time and resources.

{¶ 17} On March 30, 2015, the juvenile court issued an opinion denying Father's motion for findings of fact and conclusions of law and overruling Father's objections to the magistrate's decision. The juvenile court held as follows:

> Fathers [sic] Objection to the magistrate's Decision and order is overruled. Although [M]other failed to timely file her notice to re-locate, her compliance was virtually impossible and [F]ather lost no parenting rights as a result. Therefore, litigation on this issue was frivolous. Father's motion for findings of fact/conclusions of law * * * is hereby overruled. The magistrate properly issued findings and conclusions and any arguable gaps are answered by this entry.

{¶ 18} Father timely appealed the juvenile court's decision, raising two assignments of error. Mother filed a brief opposing Father's appeal. Mother also filed a "Motion to Dismiss Appeal/To Find Appeal Frivolous/For Attorney Fees." We begin by addressing Father's assigned errors.

**FATHER'S APPEAL**

{¶ 19} Assignment of Error No. 1:

{¶ 20} THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FIND MOTHER IN CONTEMPT FOR HER FAILURE TO TIMELY FILE A NOTICE OF INTENT TO RELOCATE OR EVEN INFORM FATHER OF HER RELOCATION UNTIL AFTER SHE MOVED.

{¶ 21} In his first assignment of error, Father contends the juvenile court erred when it

denied his motion for contempt. Father argues he established a prima facie case of contempt and Mother failed to meet her burden of demonstrating an inability to comply with the court's order.

**{¶ 22}** "A court may find a party in contempt where that party fails to comply with a lawful judgment or court order." *Poynter v. Pabst*, 12th Dist. Butler No. CA2013-03-032, 2013-Ohio-5671, ¶ 10. To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, the offending party had knowledge of the order, and the offending party violated such order. *Hetterick v. Hetterick*, 12th Dist. Brown No. CA2012-02-002, 2013-Ohio-15, ¶ 35. "A finding of contempt however, does not require proof of purposeful, willing, or intentional violation of a trial court's prior order." *Renner v. Renner*, 12th Dist. Clermont No. CA2013-06-042, 2013-Ohio-4644, ¶ 15, citing *Pugh v. Pugh*, 15 Ohio St.3d 136 (1984), paragraph one of the syllabus. "[I]t is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt [violation] will result." *Pugh* at 140.

**{¶ 23}** Once the movant has established a prima facie case of contempt, the burden then shifts to the contemnor to prove her inability to comply with the court order. *Id.*; *Keeley v. Keeley*, 12th Dist. Clermont No. CA97-02-013, 1997 WL 411607, *3 (July 21, 1997). The inability which excuses compliance must "be real and not self-imposed, nor due to fraud, sharp practices, or intentional avoidance." *Id.*

**{¶ 24}** A reviewing court will not reverse a trial court's ruling on a motion for contempt absent an abuse of discretion. *In re A.A.J.*, 12th Dist. Warren No. CA2014-10-130, 2015-Ohio-2222, ¶ 14. An abuse of discretion is more than an error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶ 25}** Here, the juvenile court denied Father's motion for contempt after concluding that it was "virtually impossible" for Mother to timely file her notice of contempt. We find that denial of Father's motion for contempt was proper, albeit on different grounds.

**{¶ 26}** As previously stated, to establish contempt, the moving party must first be able to establish by clear and convincing evidence that a valid court order exists. *Hetterick*, 2013-Ohio-15 at ¶ 35. Father contended the July 2010 order allocating parental rights and responsibilities was a valid court order that required Mother to notify him and the juvenile court of her intent to relocate with the child 60 days prior to her move. The July 2010 order provided that "[n]either parent shall permanently remove the child(ren) from the jurisdiction of this court without first filing a notice of relocation. *This notice* must first be served upon the non-moving party and must comply with Ohio law[1] and must comply with the local rules of this court."[2] (Emphasis added).

**{¶ 27}** Here, Father failed to establish a prima facie case of contempt as to Mother's alleged violation of the July 2010 order. Although Father established by clear and convincing evidence that a valid court order existed and Mother had knowledge of the order, he failed to establish that Mother violated the order *as written*. The plain, unambiguous language of the court's July 2010 order only required Mother to first file a notice of relocation when she permanently removed the child from the court's jurisdiction. At the time Mother moved from

---

1. R.C. 3109.051(G)(1) provides in relevant part the following:

> If the residential parent intends to move to a residence other than the residence specified in the parenting time order or decree of the court, the parent shall file a notice of intent to relocate with the court that issued the order or decree. * * * Upon receipt of the notice, the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child.

2. Butler County Juvenile Rule 18(G) provides that "[a]ll notices of intent to relocate * * * must be filed within the following time frames:  (1) [i]f relocating within Butler County – at least thirty (30) days in advance of the move; (2) [i]f relocating outside Butler County – at least sixty (60) days in advance of the move."

the Manhattan rental to her in-laws' residence, T.D.A.J. had already been removed from the court's jurisdiction—a move that was previously addressed by the juvenile court's September 16, 2013 order. Instead of readdressing the notice of relocation requirement set forth in the July 2010 order, the September 16, 2013 order merely set forth Father's new parenting schedule and closed with, "[a]ll orders issued previously in this case which are not inconsistent with the orders issued herein shall remain in effect pending further proceedings by this court." Thus, the September 16, 2013 order did not incorporate new language requiring Mother to file a notice of intent when moving from the Manhattan rental or, as the statute requires, from "a residence other than the residence specified in the parenting time order or decree." *See* R.C. 3109.051(G)(1). Rather, the language set forth in the court's July 2010 order was intended to govern.

{¶ 28} In the present case, Mother cannot be held in contempt of the July 2010 order for not complying with Ohio law or the local rules of the court in failing to timely file her notice of intent to relocate. The July 2010 order states that a parent seeking to permanently remove the child from the court's jurisdiction must first file a notice of relocation. The following sentence in the order qualifies the type of notice required if the condition established by the court occurs. The phrase "[t]his notice" relates back to the notice of relocation required when a parent seeks to permanently remove the child from the court's jurisdiction. Mother had already permanently removed T.D.A.J. from the Butler County Juvenile Court's jurisdiction and was seeking to relocate with the child within the state of Illinois. Therefore, Mother's need to file a notice of her intent to relocate in compliance with the court's July 2010 order was not triggered.

{¶ 29} This does not mean that Mother was under no obligation to notify Father or the juvenile court of her intent to relocate with the child. Mother was obligated by law to comply with the statutory requirements in R.C. 3109.051(G)(1) and the requirements of Butler County

Juv.R. 18(G) before relocating with T.D.A.J.. Mother's failure to comply with R.C. 3109.051(G)(1) and Juv.R. 18(G), however, cannot serve as the basis for Father's motion for contempt as these are applicable laws and not court orders. Father needed to prove by clear and convincing evidence that Mother was required by a valid court order to file a notice of her intent to relocate with T.D.A.J. prior to her move, and Father failed to meet this burden as the July 2010 order did not require such notice.

{¶ 30} Accordingly, for the reasons set forth above, we conclude that the juvenile court did not err when it denied Father's motion to hold Mother in contempt. Father's first assignment of error is overruled.

{¶ 31} Assignment of Error No. 2:

{¶ 32} IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE FOR THE TRIAL COURT TO MAKE A FINDING THAT FATHER ENGAGED IN FRIVOLOUS CONDUCT AND ORDERING FATHER TO PAY MOTHER'S ATTORNEY FEES, WHEN THE TRIAL COURT FOUND THAT MOTHER FAILED TO TIMELY FILE HER NOTICE OF INTENT TO RELOCATE, AND IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO NOT ISSUE CONCLUSIONS OF LAW.

{¶ 33} In his second assignment of error, Father argues the juvenile court erred when it found his motion for contempt frivolous and ordered him to pay Mother's attorney fees. Father first argues the juvenile court did not provide sufficient findings of fact or conclusions of law when ordering him to pay Mother's attorney fees. He then argues that even if sufficient findings of fact and conclusions of law were provided, the court's award of attorney fees is not supported by the record as there was no evidence that Father's motion was unwarranted under existing law or was filed merely to harass Mother.

{¶ 34} A trial court's decision to award attorney fees based on a party's frivolous conduct involves mixed questions of law and fact. *Ownerland Realty, Inc. v. Zhang*, 12th

Dist. Warren Nos. CA2013-09-077 and CA2013-10-097, 2014-Ohio-2585, ¶ 30. "A court's factual determinations are accorded a degree of deference and will not be disturbed on appeal if there is competent, credible evidence in the record to support them." *Dudley v. Dudley*, 196 Ohio App.3d 671, 2011-Ohio-5870, ¶ 9 (12th Dist.). De novo review, however, is utilized to review legal questions, such as whether a party's conduct is not warranted under existing law and cannot be supported by a good-faith argument for extension, modification, or reversal of exiting law. *Id.* at ¶ 10; *Zhang* at ¶ 30.

{¶ 35} R.C. 2323.51(B)(1) provides that a court may award costs, reasonable attorney fees, and other reasonable expenses incurred in connection with a civil action to a party adversely affected by frivolous conduct. Frivolous conduct is defined as conduct of a party to a civil action that satisfies any of the following:

> (i) It obviously serves merely to harass or maliciously injure another party to a civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of a new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

R.C. 2323.51(A)(2)(a)(i)-(iv).

{¶ 36} In determining whether conduct is frivolous, courts must be careful not to deter legitimate claims. *Zhang*, 2014-Ohio-2585 at ¶ 31. R.C. 2323.51 is "designed to chill egregious, overzealous, unjustifiable, and frivolous action." *Cleveland v. Abrams*, 8th Dist.

Cuyahoga No. 97814, 2012-Ohio-3957, ¶ 17. Therefore, "[t]he question to ask when determining whether a claim is frivolous is 'whether no reasonable lawyer would have brought the action in light of the existing law.'" *Zhang* at ¶ 31, citing *State ex rel. Chrisman v. Clearcreek Twp.*, 12th Dist. Warren No. CA2013-03-025, 2014-Ohio-252, ¶ 10. R.C. 2323.51 applies an objective standard in determining frivolous conduct, as opposed to a subjective one, and the finding of frivolous conduct is determined without reference to what the individual knew or believed. *Chrisman* at ¶ 11.

{¶ 37} In the present case, the finding of frivolous conduct is not supported by the record. A party is entitled to file a motion for contempt where he has a good faith argument that the opposing party has failed to comply with a lawful court order. *See Pabst*, 2013-Ohio-5671 at ¶ 10. Father—and the juvenile court—believed that a valid court order existed which required Mother to file a notice of her intent to relocate. It is uncontested that Mother did not provide Father or the juvenile court with advance notice of her move to Mokena. Interpretation of the language utilized by the court in its July 2010 order was necessary to determine the outcome of Father's motion for contempt. As such, Father cannot be found to have engaged in frivolous conduct.

{¶ 38} Accordingly, we find that the juvenile court erred in finding Father's motion for contempt frivolous and awarding Mother attorney fees. Father's second assignment of error is sustained and the decision of the juvenile court granting Mother's motion for attorney fees is reversed. The award of attorney fees to Mother in the amount of $2,480 is hereby vacated.

## MOTHER'S MOTION FOR ATTORNEY FEES ON APPEAL

{¶ 39} On September 21, 2015, Mother filed a "Motion to Dismiss Appeal/To Find Appeal Frivolous/For Attorney Fees." In this motion, Mother requested Father be ordered to pay her attorney fees related to the present appeal on the basis that Father's appeal is

"wholly frivolous" as contemplated by R.C. 2323.51. Mother's motion is not well-taken and is hereby denied. Father's arguments on appeal do not serve to merely harass Mother and his appeal is warranted under existing law.

{¶ 40} Judgment affirmed in part, reversed in part, and the award of attorney fees vacated.

S. POWELL, P.J., and RINGLAND, J., concur.